UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORILLARD TOBACCO COMPANY, a Delaware corporation, | ) ) ) |
| Plaintiff, | ) No. 03-cv-5311 ) |
| v. | ) Consolidated with: ) |
| MONTROSE WHOLESALE CANDIES AND SUNDRIES, INC., et al., | ) No. 03-cv-4844 ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

There are two motions presently before us in this case: Lorillard Tobacco Company's ("Lorillard") Motion to Adopt Magistrate Judge Cole's Report and Recommendation of July 2, 2008 ("Motion to Adopt the Magistrate's Report") and Parkway Bank and Trust Company's ("Parkway Bank") Motion to Intervene. We grant Lorillard's motion and deny Parkway Bank's.

## I. BACKGROUND

The history of this case is extensive and only those facts essential to these motions need be reiterated in full here: on November 19, 2007, Lorillard obtained a final judgment of $3,336,195.07 against Montrose Wholesale Candies and Sundries, Inc., and its owners, Ray and Sandra Hazemi. (Dkt. Nos. 396–397.)[1] Prior to the issuance of this final judgment, we granted Lorillard's motion to freeze the Hazemis' assets in early 2006, because we found that the

---

[1] All docket numbers cited refer to the docket for Case No. 03-cv-4844 unless otherwise indicated.

Hazemis were "likely to move, hide or otherwise transfer assets and records relating thereto in an effort to frustrate the ultimate relief [Lorillard] seeks." (Dkt No. 229; Dkt. No. 239 at 2.) In the first schedule of assets filed pursuant to the freeze order, Mr. Hazemi claimed a fifty percent ownership interest in the property at 6630 West Montrose Road in Harwood Heights, Illinois ("the Property"). (Case No. 03-cv-5311, Dkt. No. 141 at 3.) Mr. Hazemi also listed his sister, Giti Azari, as owning the remaining interest in the Property. (*Id.*)

The question of who owns the Property has become an issue in a state foreclosure proceeding relating to the Property. The issue is not new to us, but an apparent oversight in this litigation has created some confusion in the state proceeding. On July 2, 2008, in response to Lorillard's motion, Magistrate Judge Cole issued a report and recommendation ("the Magistrate's Report") that the apparent transfer of Mr. Hazemi's half-interest in the Property to Ms. Azari on August 2, 2005 ("the Transfer") be set aside as fraudulent. (Dkt. No. 489.) There were no objections to the adoption of the Magistrate's Report filed by any party within the ten-day period allowed for such objections.[2] Nevertheless, Lorillard failed to move for the adoption of the Magistrate's Report after the period for objections expired until it filed its current Motion to Adopt the Magistrate's Report on August 10, 2010. (Case No. 03-cv-5311, Dkt. No. 328.)

The status of the Magistrate's Report matters in the state foreclosure proceeding, because Parkway Bank is seeking to foreclose on a mortgage issued to Ms. Azari on August 17, 2007 and secured by the entire Property. (Case No. 03-cv-5311, Dkt. No. 350, Ex. 2.) On the other hand,

---

[2] At that time, Federal Rule of Civil Procedure 72(b) allowed ten days to file objections to a magistrate judge's findings. Fed. R. Civ. P. 72(b) (2006 ed.). In 2009, an amendment to Rule 72(b) extended the period to fourteen days. Fed. R. Civ. P. 72 (b)(2) (2010 ed.); Statutory Time-Periods Technical Amendments Act of 2009, Pub. L. 111-16, § 6(1), 123 Stat. 1607, 1608.

Lorillard asserts a judgment creditor's claim to the half-interest in the Property Mr. Hazemi may still own. (*Id.*, Ex. 5 at 9–10.) This claim turns in part on whether Mr. Hazemi validly transferred this interest in the Property to Ms. Azari in 2005. As a result, Parkway Bank now seeks to intervene in this case in order to object to the adoption of the Magistrate's Report. (Case No. 03-cv-5311, Dkt. No. 338.)

## II. ANALYSIS

### A. Parkway Bank's Motion to Intervene

We first consider Parkway Bank's Motion to Intervene. Parkway Bank seeks to intervene in this case pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. Rule 24(a)(2) requires us to allow anyone to intervene who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The Seventh Circuit has interpreted Rule 24(a)(2) as requiring potential intervenors to "(1) make a timely application, (2) have an interest relating to the subject matter of the action, (3) be at risk that that interest will be impaired by the action's disposition and (4) demonstrate a lack of adequate representation of the interest by the existing parties." *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001). We believe Parkway Bank has failed to satisfy the first and third requirements.

Regarding timeliness, "[d]etermining whether an application to intervene is timely is committed to the sound discretion of the district court." *Shea v. Angulo*, 19 F.3d 343, 349 (7th Cir. 1994). In determining whether a motion to intervene is timely, we consider four factors: "(1) the length of time the intervenor knew or should have known of his interest in the case;

-3-

(2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances." *Heartwood, Inc. v. U.S. Forest Service, Inc.*, 316 F.3d 694, 701 (7th Cir. 2003).  The Seventh Circuit has also described the timeliness factor as "essentially a reasonableness inquiry, requiring potential intervenors to be reasonably diligent in learning of a suit that might affect their rights, and upon learning of such a suit, to act to intervene reasonably promptly." *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 175 (7th Cir. 1995.).  The purpose of imposing the timeliness requirement is "to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Reid L. v. Illinois State Bd. of Educ.*, 289 F.3d 1009, 1018 (7th Cir. 2002).

We believe these factors weigh strongly in favor of denying Parkway Bank's Motion to Intervene as untimely.  In our view, the relevant point at which Parkway Bank should have known of its potential interest in this case is March 31, 2008.  *Heartwood, Inc.*, 316 F.3d at 701.  On that date, Lorillard served Parkway Bank with a subpoena to produce:

> All books, papers, statements, documents and/or other records in your possession or control related to the mortgage executed on August 14, 2007, between Giti Azari and Parkway Bank & Trust Co. for the property at 6630 W. Montrose, Harwood Heights, Illinois 60706 (Tax ID No. 13-18-404-004-0000)

(Case No. 03-cv-5311, Dkt. No. 357, Ex. G at 1.)  The subpoena clearly identifies this case and the accompanying case numbers in the caption.  (*Id.*)  Parkway Bank complied with the subpoena on April 9, 2008.  (*Id.* at 2.)  At the time of this subpoena, a "reasonably diligent" potential intervenor would have inquired into why it received a subpoena about a mortgage for which it was the mortgagee.  *People Who Care*, 68 F.3d at 175.

Furthermore, the prejudice to the original parties in this case arising from the added delay of allowing Parkway Bank to intervene in this seven-year old suit would be substantial. *Heartwood, Inc.*, 316 F.3d at 701. Lorillard in particular has struggled mightily against the obstinance of the Defendants in this case. (Dkt. Nos. 239, 269; Case No. 03-cv-5311, Dkt. No. 120.) The same is true for us, as we have previously held the Defendants in contempt for failing to be forthright about their assets. (Dkt. Nos. 269–270.) To allow Parkway Bank to intervene now to contest an issue already thoroughly contested before Magistrate Judge Cole would reinvigorate a case that should have been resolved years ago. As such, the prejudice to the original parties in this case, Lorillard in particular, weighs against allowing Parkway Bank to intervene at this late stage. *Id.*

We also do not believe Parkway Bank will be prejudiced by not being allowed to intervene at this stage. *Id.* Parkway Bank claims its ability to assert its priority status as a creditor for the Property will be impaired in the state foreclosure proceeding, because Lorillard will be able to rely on our adoption of the Magistrate's Report as "substantive evidence" of its claim to half of the Property. (Case No. 03-cv-5311, Dkt. No. 350, at 12.) But even if Lorillard uses the Magistrate's Report to support its counterclaim in the state foreclosure proceeding, Parkway Bank acknowledges that it remains free to collaterally attack this evidence. (*Id.* at 7–9.) Indeed, we agree that Parkway Bank would not be precluded from attacking the findings of the Magistrate's Report in the state foreclosure suit. The doctrine of issue preclusion, also called collateral estoppel, only applies when "the party against whom estoppel is invoked was fully represented in the prior action." *Dexia Credit Local v. Rogan*, Case No. 09-2986, 2010 WL 4751739, at *13 (7th Cir. 2010). Since we are denying Parkway Bank's motion to intervene, it is

not "fully represented" in this action and would not be collaterally estopped from attack the findings in the Magistrate's Report.[3] *Id.* Furthermore, as Lorillard correctly notes, whether or not Mr. Hazemi's Transfer of the Property to Ms. Azari was fraudulent is not dispositive of Parkway Bank's rights with respect to the Property. (Dkt. No. 356 at 7.) Parkway Bank will still be able to assert a "good faith" defense under the Illinois Uniform Fraudulent Transfer Act ("IUFTA") based on its purported lack of knowledge that the Transfer was fraudulent. 740 ILCS 160/9(a). Thus, Parkway Bank will not be prejudiced by not being allowed to intervene. *Heartwood, Inc.*, 316 F.3d at 701.

The "unusual circumstances" of this case further justify our denial of Parkway Bank's Motion to Intervene. *Id.* The Defendants' consistent disregard for the judicial process throughout this case makes us reluctant to reopen it. (Dkt. Nos. 238–239, 269–270.) The Defendants obfuscated their relationship to the Property in question throughout this proceeding, and we are not inclined to let a third party's entry into the case provide the Defendants another opportunity to renew their campaign of obstruction. (Dkt. No. 270 at 7–8.)

In addition to its Motion being untimely, Parkway Bank's interest in the Property will not be impaired by its absence from this suit. *Vollmer*, 248 F.3d at 705. Parkway Bank claims that it has an interest in protecting the scope and priority of its mortgage on the Property that will be impaired by the adoption of the Magistrate's Report. (Case No. 03-cv-5311, Dkt. No. 357 at 9.) Parkway Bank describes this impairment as having "to educate an unfamiliar tribunal, in a notoriously overburdened section of the judiciary, with the facts of this case." (*Id.* at 12.) We

---

[3] The same is not true for Ms. Azari, who, as we discuss below, fully participated in the supplemental proceeding regarding the Transfer of the Property.

believe Parkway Bank's skepticism of the state court is unwarranted. The state court is perhaps better equipped than we are to evaluate the merits of Parkway Bank's good faith defense and other claims pertaining to its mortgage on the Property. After all, these are ultimately questions of Illinois law. *See* 740 ILCS 160/9(a). And as we noted before, Parkway Bank remains free to attack Lorillard's reliance on the Magistrate's Report or, in the alternative, to argue its lack of knowledge that the Transfer was fraudulent. *Id.* Thus, Parkway Bank's interest will not be impaired by the disposition of this case. *Vollmer*, 248 F.3d at 705.

Because Parkway Bank has failed to establish that its Motion to Intervene is timely or that its interest will be impaired, we deny its Motion accordingly. *Id.*

### B. Lorillard's Motion to Adopt the Magistrate's Report

Next, we turn to Lorillard's Motion to Adopt the Magistrate's Report. Having reviewed the factual and legal findings in the Magistrate's Report de novo, we grant Lorillard's Motion and supplement the Magistrate's Report as discussed below.

#### 1. Standard of Review

We referred Lorillard's Motion to Set Aside the Fraudulent Transfer of 6630 W. Montrose ("Set Aside Motion") to Magistrate Judge Cole on May 15, 2008. (Dkt. Nos. 458, 462.) We made this referral pursuant to 28 U.S.C. § 636(b)(3), which authorizes magistrate judges to perform "such additional duties as are not inconsistent with the Constitution and laws of the United States."[4] This catch-all provision of the Federal Magistrate Act allows a district

---

[4] Although the referral form does not cite the statute directly, the form's language precisely mirrors 28 U.S.C. § 636(b)(3).

court to refer post-judgment proceedings to a magistrate judge. *King v. Ionization Intern., Inc.*, 825 F.2d 1180, 1185 (7th Cir. 1987). Absent the parties' consent, however, a magistrate judge may not enter a final appealable order in a post-judgment dispute. *Michelson v. Schor*, No. 93-5124, 1996 WL 667803, at *2 (N.D. Ill. Nov. 15, 1996). Instead, as with other dispositive matters referred to a magistrate judge without express consent, the magistrate judge issues a report and recommendation on how the dispute should be resolved. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). The district court must adopt the report and recommendation in order for it to have any effect.[5] *Id.*

Prior to the district court adopting the magistrate judge's report and recommendation, any party who wishes to object to the adoption of the report can do so within fourteen days of being served with a copy of the report.[6] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2) (2010 ed.). As of July 2, 2008, the relevant time in this case, the period for filing objections was ten days. *See* Statutory Time-Periods Technical Amendments Act of 2009, Pub. L. 111-16, § 6(1), 123 Stat.

---

[5] Lorillard suggests that we need not adopt the Magistrate's Report for it to be in effect. (Case No. 03-cv-5311, Dkt. No. 356 at 9.) We believe otherwise. As Wright, Miller & Marcus discuss: "It is fundamental that [the magistrate judge's] recommendations do not become an order of the court until the district judge takes some action." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure*, § 3070.1 (2d ed. 1997).

[6] Ms. Azari argues that matters referred to a magistrate judge pursuant to 28 U.S.C. § 636 (b)(3) are not subject to the time limits imposed in 28 U.S.C. § 636 (b)(1) and Rule 72(b). (Case No. 03-cv-5311, Dkt. No. 348 at 1-2.) Our precedent holds otherwise. Although Rule 72(b) expressly refers to "pretrial" matters, we have applied the procedures in Rule 72(b) and 28 U.S.C. § 636(b)(1) to post-judgment matters such as fee disputes and collection proceedings. *Continental Bank, N.A. v. Everett*, 861 F.Supp. 642, 643 (N.D. Ill. 1994) (applying Rule 72(b) to fee disputes); *Michelson*, 1996 WL 667803, at *2 (applying Rule 72(b) and 28 U.S.C. § 636(b)(1) to collection proceedings). Thus, the time period for filing objections to the magistrate judge's recommendation established in Rule 72(b) and 28 U.S.C. § 636(b)(1) applies in this case.

1607, 1608 (amending 28 U.S.C. § 636(b)(1) to change "ten days" to "fourteen days"). (Dkt. No. 489.) Absent objections, a district court typically reviews the magistrate judge's report and recommendation for clearly erroneous factual conclusions and mistakes of law. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). Where a party files and serves "specific written" objections to the magistrate's findings, the district court must conduct de novo review of any part of the magistrate's findings to which there are proper objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2) (2010 ed.). But even where no party properly raises objections to the magistrate judge's report and recommendation, the district court can still review the magistrate's findings de novo at its discretion. *Schur*, 577 F.3d at 760.

Some unusual circumstances in this case make our review of the Magistrate's Report more complicated than it otherwise would be. No party filed any objections to Magistrate Cole's report in the ten-day period after its issuance on July 2, 2008. Lorillard also failed to move that we adopt the Magistrate's Report, and absent such a motion, we took no action. But Ms. Azari and Parkway Bank now both seek to object to the Magistrate's Report over two years after its issuance.

Because we have denied Parkway Bank's Motion to Intervene, it has no standing to raise its objections.[7] On the other hand, Ms. Azari became a party to the supplementary proceeding to

---

[7] Even after reviewing Parkway Bank's Response to Lorillard's Motion to Adopt the Magistrate's Report, it is immediately obvious that the objections Parkway Bank seeks to offer are not substantive. (Case No. 03-cv-5311, Dkt. No. 350.) Instead, Parkway Bank largely reiterates the arguments from its Motion to Intervene about the potential effect of the Magistrate's Report in the state foreclosure suit. Repeatedly throughout its Response, Parkway Bank argues that our adoption of the Magistrate's Report will "depriv[e] Parkway Bank of an opportunity to present its defenses" to Lorillard's counterclaim in the state foreclosure suit. (*Id.* at 5.) As we have already stated, we do not believe our adoption of the Magistrate's Report precludes Parkway Bank from asserting its defenses in the state foreclosure suit. We also do not

set aside the Transfer of the Property when Lorillard served her attorney with its Set Aside Motion.[8] (Dkt. Nos. 453–454.) Indeed, Ms. Azari appeared in that proceeding represented by counsel and filed a Response to Lorillard's Set Aside Motion accompanied by exhibits. (Dkt. No. 480.) Nevertheless, Ms. Azari failed to file objections to the Magistrate's Report despite a clear indication in the Report that failure to file objections within ten days would waive her right to appeal the Report's findings. (Dkt. No. 325 at 14.) Lorillard contends Ms. Azari was served with the Magistrate's Report on the date of issuance, and Ms. Azari has not suggested otherwise. (Case No. 03-cv-5311, Dkt. No. 355 at 3.) As a party to the supplemental proceeding, we have no reason to doubt Ms. Azari received the Report via electronic service when Magistrate Judge Cole issued it on July 2, 2008. (Dkt. No. 489.)

Given that over two years have passed since the issuance of the Magistrate's Report, we are not obligated to entertain Ms. Azari's objections. Indeed, the period for her to object expired on July 12, 2008. Nevertheless, exercising our discretion to do so, we have reviewed the

---

believe our consideration of the Magistrate's Report is the appropriate occasion to evaluate these defenses. Furthermore, in light of Parkway Bank's failure to articulate any substantive objections to the Magistrate's Report, we doubt our decision to adopt the Magistrate's Report would change even if Parkway Bank were a party to this suit. We have already reviewed the findings in the Magistrate's Report de novo and adopt them as our own in all relevant respects.

[8] Under Federal Rule 69, Illinois law governs the supplementary collection proceedings in this case. Fed. R. Civ. P. 69 (a)(1). IUFTA allows a creditor, including a judgment creditor, to initiate a supplementary proceeding to set aside a fraudulent transfer of property done to avoid an obligation. 740 ILCS 160/8(a)(1); *Kennedy v. Four Boys Labor Serv., Inc.*, 279 Ill. App. 3d 361, 164–65, 664 N.E.2d 1088, 1092–93 (2nd Dist. 1996). Lorillard initiated such an action through filing and serving its Set Aside Motion on the Defendants and Ms. Azari. (Dkt. Nos. 453–454.)

findings in the Magistrate's Report de novo in order to put to rest the confusion over its status.[9]

We adopt those findings as our own as we now discuss.

### 2. De Novo Review of the Magistrate's Report

IUFTA allows a court to set aside a debtor's property transfer as fraudulent with respect to a creditor where the debtor makes the transfer:

> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS 160/5(a). Thus, IUFTA establishes two types of fraud: fraud in fact and fraud in law. A party can prove fraud in law by showing that the property transfer occurred without the debtor receiving "a reasonably equivalent value in exchange for the transfer" and in anticipation of the debtor incurring "debts beyond his ability to pay." *Id.* § 5(a)(2). A party can prove fraud in fact by showing an "actual intent" to defraud. *Id.* § 5(a)(1). IUFTA sets out certain indicia of fraudulent intent, which are:

---

[9] Conducting de novo review does not require us to hold additional hearings or to accept additional evidence. *United States v. Raddatz*, 447 U.S. 667, 674, 100 S. Ct. 2406, 2411 (1980); *U.S. v. Severson*, 49 F.3d 268, 273 (7th Cir. 1995). Instead, "following a review of the record," we can adopt the magistrate judge's findings as our own as we see fit. *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). In this case, the docket indicates there was no hearing held on the Set Aside Motion. Thus, the record consists of the parties briefs filed in conjunction with that Motion. Also, even though the untimeliness of Ms. Azari's objections to the Magistrate's Report obviate our obligation to do so, we have also reviewed her Response to Lorillard's Motion to Adopt the Magistrate's Report and Lorillard's Reply thereto.

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b). In this case, Lorillard has offered sufficient evidence to prove that the Transfer of the Property was fraudulent under both of these theories. Thus, we adopt the Magistrate Report's finding that the Transfer of the Property was fraudulent in fact, and we also find that the Transfer was fraudulent in law.

**I. Fraud in Law**

In both her briefs on the Transfer, Ms. Azari dwelt extensively on the fact that she claims to have paid Mr. Hazemi $300,000 for the Property. (Dkt. No. 480 at 2–3; Case No. 03-cv-5311, Dkt. No. 348 at ¶¶ 7–10.) This fact, if true, would go toward rebutting a fraud in law theory. Magistrate Judge Cole declined to determine whether the Transfer of the Property was fraudulent in law, because he found sufficient indicia of fraud in fact. (Dkt. No. 489 at 10.) Nevertheless,

based on our own consideration of the evidence, we believe Ms. Azari did not pay "reasonably equivalent value" for the Property and the Transfer was fraudulent in law. *Id.* § 5(a)(2).

We believe there is strong evidence that, contrary to Ms. Azari's claims, she paid nothing for Mr. Hazemi's half-interest in the Property. On March 22, 2006, seven and a half months after the purported Transfer, both Mr. Hazemi and Ms. Azari testified regarding the Property at a bond hearing for Ms. Azari's boyfriend, Mohammad Kakvand. (Dkt. No. 455-4, Ex. K.) Mr. Hazemi and Ms. Azari both pledged the Property as collateral to secure Mr. Kakvand's release. (*Id.*) Although Mr. Hazemi claimed he still owned a half-interest in the Property, he also admitted to ostensibly signing away his interest in the Property without receiving any money in return. (*Id.* at 5–6.)[10] Mr. Hazemi also testified that Ms. Azari might use the Property to obtain a loan for which the proceeds could be used to pay Mr. Hazemi for his half-interest. (*Id.* at 6.) Mr. Hazemi did not testify that he ever received this compensation, however, and he admitted that he signed away his interest in the Property without getting anything in exchange. (*Id.* at 10.) Ms. Azari's testimony at the same hearing casts further doubt on her claim to have paid $300,000 for the Property. When asked what she gave Mr. Hazemi "in exchange for his half interest in the property," Ms. Azari responded point blank: "Nothing." (*Id.* at 13.) She also claimed to not know whether she owed Mr. Hazemi any money. (*Id.*)

Despite this testimony, Ms. Azari's principal argument in her briefs is that she made payments of upwards of $300,000 out of loan proceeds secured by the Property at Mr. Hazemi's direction as payment for his half-interest. (Dkt. No. 480 at 2; Case No. 03-cv-5311, Dkt. No.

---

[10] The page numbers we reference with respect to Docket No. 455-4, Exhibit K are based on the overall pagination of the collection of Exhibits J–O comprising Docket No. 455-4 rather than the transcript pagination within the exhibits.

348 ¶¶ 7–10.) In support of this assertion, Ms. Azari produced several cashier's checks and other records of disbursements from a loan account collateralized by the Property and in her name. (Dkt. No. 480, Ex. A.) None of these disbursements were to Mr. Hazemi directly, however, and there is no other evidence to indicate that these disbursements were made at his direction. (*Id.*) Most crucially, the first four payments Ms. Azari claims to have made at Mr. Hazemi's behest, totaling $112,500, occurred prior to her testimony at the bond hearing. (*Id.* at 10–11.) Thus, Ms. Azari was either lying at the bond hearing when she said she paid nothing for the Property or she has been lying about her belatedly-realized explanation of how she paid. The gaping holes in Ms. Azari's later explanation—namely, the absence of any proof that the payments she claims she made in exchange for the Property were to or for Mr. Hazemi—lead us to believe that Ms. Azari's admission at the bond hearing was a moment of uncharacteristic candor. As such, we believe Ms. Azari paid nothing in exchange for Mr. Hazemi's half-interest in the Property.

Furthermore, even if the $300,000 in payments occurred at Mr. Hazemi's direction and in exchange for the Property, this amount still falls short of the exchange of "reasonably equivalent value" for the Property. *Id.* In the first Schedule of Assets Mr. Hazemi filed in response to Lorillard's attempt to discover his assets, Mr. Hazemi valued the Property at $900,000, which would make his half-interest worth $450,000. (Case No. 03-cv-5311, Dkt. No. 141 at 3.) This disclosure occurred on March 2, 2006, seven months after the Transfer and three weeks prior to the bond hearing. (*Id.* at 4.) Even in those go-go economic days, it is doubtful that the value of the Property rose fifty percent in seven months. Even more striking, Ms. Azari claimed that the Property had been appraised at $3,150,000 at the bond hearing on March 22, 2006. (Dkt. No.

455-4, Ex. K at 12.) In any event, even the lower of these wildly divergent figures—both of which were likely inflated or deflated depending on the reason for which the figure was being offered—far exceeds the $600,000 value upon which the supposed $300,000 payment for Mr. Hazemi's half-interest was based. Thus, even if Ms. Azari paid $300,000 for Mr. Hazemi's half-interest in the Property, this sum is unreasonably low compared with the total value of the Property Ms. Azari claimed when it behooved her to provide a more accurate accounting.

Finally, the timing of the Transfer leaves little doubt that Mr. Hazemi made the Transfer when he "believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." *Id.* § 5(a)(2)(B). Mr. Hazemi signed away his interest in the Property on August 2, 2005. (Dkt. No. 455-2, Ex. C.) Seven months prior, in January of 2005, Lorillard filed its Second Amended Complaint personally naming Mr. Hazemi as a defendant in this case. (Dkt. No. 57.) Based on Lorillard's claims of willful trademark infringement of at least five separate Lorillard trademarks, Mr. Hazemi and his co-Defendants, which included the business entities he owned and controlled, faced statutory damages of $1,000,000 for each of the five trademarks infringed. 15 U.S.C. § 1117© (2000) (amended to $2,000,000 per trademark by Prioritizing Resources and Organization for Intellectual Property Act of 2008, Pub. Law No. 110-403, 122 Stat. 4256, 4259). Thus, Mr. Hazemi's potential liability to Lorillard totaled $5,000,000 at the time of the Transfer.

Excluding Mr. Hazemi's half-interest in the Property, he, his wife, and the business entities they controlled had assets totaling less than $1,000,000 as of March 2, 2006. (Dkt. No. 455-3, Ex. I at 49–50.) While we are unable to determine precisely the value of the Property at that time due to the conflicting values claimed by Mr. Hazemi and Ms. Azari, we have no doubt

that Mr. Hazemi's half-interest in the Property would have comprised a substantial portion of his assets. By transferring his half-interest in the Property for nothing or, at the very least, a substantially deflated amount, Mr. Hazemi knew or reasonably should have known that he was diminishing his assets even further below his potential liability. Thus, we are satisfied that Lorillard has put forward more than ample evidence to show that the Transfer of the Property was fraudulent in law. *Id.* § 5(a)(2).

### ii. Fraud in Fact

Given our independent conclusion that the Transfer was fraudulent in law, we need not dwell extensively on Magistrate Judge Cole's conclusion, with which we agree, that the Transfer was fraudulent in fact. (Dkt. No. 489 at 10.) Having reviewed the record, we find sufficient indicia of fraudulent intent to support Lorillard's claim that the Transfer was fraudulent in fact. *Id.* § 5(b). We therefore adopt the findings of fact and law in the Magistrate's Report. (*Id.*)

There are more than enough indicia of fraud surrounding the Transfer to sustain an inference of fraudulent intent. Mr. Hazemi transferred his interest in the Property to "an insider," his sister, Ms. Azari. *Id.* § 5(b)(1). (Dkt. No. 455-4, Ex. K at 5.) Mr. Hazemi also admitted to retaining ownership of the Property after the Transfer. *Id.* § 5(b)(2). (*Id.*) The Transfer was concealed in that, the day after Mr. Hazemi executed the Transfer, he gave deposition testimony in this case in which he continued to claim a half-interest in the Property without mentioning the fact that he had signed away his interest. *Id.* § 5(b)(3). (Dkt. No. 455-4, Ex. E at 530–31.) The Transfer also occurred during the pendency of this suit. *Id.* § 5(b)(4). Furthermore, as we found in holding the Hazemis in contempt, Mr. Hazemi and his wife have tried to conceal their assets during the course of this litigation. *Id.* § 5(b)(7). (Dkt. No. 270 at

6–8.) Finally, the Transfer occurred shortly before a substantial debt was incurred, namely, the $3,336,195.07 judgment in this case. *Id.* § 5(b)(10). (Dkt. No. 396 at 1.) While we need not find a majority of the eleven statutory indicia of fraud to draw an inference of fraudulent intent, having done so, we are more than satisfied that Magistrate Judge Cole was correct in his finding of fraud in fact. *Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 419 F.3d 594, 600 (7th Cir. 2005). We therefore adopt the Magistrate's Report of July 2, 2008. (Dkt. No. 488.)

### III. CONCLUSION

We grant Lorillard's Motion to Adopt the Magistrate's Report and supplement the Report's findings as discussed above. We also deny Parkway Bank's Motion to Intervene. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Date: 1/10/11